McIlvaine, J.
An information in the nature of a quo warranto was filed in this case, on the 8th day of March, 1869, against the Pennsylvania and Ohio Canal Company, by its corporate name, complaining that, without any warrant, grant, charter, or legal authority, the defendant had assumed to be a body politic and corporate, and to use and exercise the following liberties, privileges, and franchises, to wit, that of suing and being sued by and under the name of the Pennsylvania and' Ohio Canal Company; of constructing and maintaining a navigable canal from a point on the Ohio canal, in Akron, Ohio, to a point near the city of Pittsburg, in the State of Pennsylvania, and of exercising the right and power of eminent domain; and also the right and power of leasing, selling, and abandoning such portion or portions of its canal, as, in the opinion of the defendant, might be for its interests; concluding with a prayer for process against the defendant, to the end *125 that it might be made to answer to the State of Ohio, by what warrant it claimed to use and enjoy the liberties, privileges, and franchises aforesaid.
The defendant pleaded, as and for its warrant and charter for claiming the franchise to be a body politic and corporate, and the right to sue and be sued by its corporate-name, and the right to construct and maintain its canal, and the right to exercise the power of eminent domain, a certain statute, passed by the general assembly of the State of' Ohio, on the 10th day of January, 1827, entitled “an act to incorporate the Pennsylvania and Ohio Canal Company,” and certain other statutes of the same state supplementary thereto, and also a certain statute of the State of Pennsylvania, passed by the general assembly of the commonwealth' of Pennsylvania, on the 14th day of April, 1827, entitled “ an act to incorporate the Pennsylvania and Ohio Canal Company,” together with certain other statutes of said, commonwealth supplementary thereto; and for its warrant, and authority to lease, sell, or abandon such portion or portions of its canal, as in its opinion might be for its interests,, the defendant pleaded a special act of the general assembly of the State of Ohio, passed March 20, 1867, entitled “an act to authorize the Pennsylvania and Ohio Canal Company to abandon, lease, or sell any portion or portions of' said canal.”
The relator, by his replication, admitted the corporate existence of the defendant, and its corporate powers to sue- and be sued, etc., to construct and maintain a canal, etc.,, and to exercise the power of eminent domain, as granted by the act of the general assembly of the State of Ohio,, passed January 10, 1827, and the acts supplementary thereto, and as pleaded in the defendant’s plea; but denied the right and power of the defendant to sell, lease, or abandon any portion or portions of its canal under and by virtue of ‘ said statute of March 20, 1867, averring that said act was in conflict with the provisions of the constitution of the state, and therefore void.
The relator also averred, in his replication, that the de *126 fendant had failed to keep its canal in repair for a period of more than twelve months at one time, both before and after the passage of the act of March 20, 1867, in violation of the provisions and conditions of said act of January 10, 1827, and the acts supplementary thereto, and that by reason thereof, the defendant had ceased to be a corporation and had forfeited its charter.
The relator further averred that the defendant had abandoned certain portions of its canal, and leased other portions, without legal authority to do so, and in violation of its charter, and thereby its charter had become forfeited to the State of Ohio; concluding his replication with a prayer for judgment of forfeiture and dissolution, etc.
Upon this state of pleadings, a question of practice arises, which has been considered by the court, to wit: "Whether it is competent for the relator, in his replication to the defendant’s-plea, to set up a cause of forfeiture and demand a judgment of dissolution against the defendant — there having been no such complaint made or relief demanded in the information.
In considering this question, we have come to the following conclusions : The office of an information in the nature of a quo warranto, is not to tender an issue of fact, but simply to call upon the defendant to show its warrant or charter for exercising the privileges and franchises named; and when filed against a corporation, by its corporate name, it nfust be regarded as admitting the corporate existence of the defendant defacto; but its legal right to exist is not thereby admitted, nor its right to exercise any other franchise specified in the information. When, therefore, a charter or warrant, regular upon its face, is pleaded by the defendant, it is competent for the relator to show, by replication, that its charter has been forfeited by the act of the defendant, or to show that the charter does not, in fact or in law, confer upon the defendant the particular franchise in dispute. And when a cause of forfeiture is thus shown, the state is entitled to a judgment of ouster and dissolution; but if it only appears that the charter does not confer upon *127 the defendant the right to exercise the particular franchise, then judgment of ouster as to such franchise only can be rendered. S. & C. 1271; The King v. City of London, 8 St. Trials, 1039; The King v. Amery, 2 Durnf. & East, 515; People v. Richardson, 4 Cowen, 97; Same v. Bank of Hudson, 6 Cowen, 217; Same v. R. & S. Railroad Co., 15 Wend. 118.
In .regard to the facts of the case, we find that the defendant was incorporated in the year 1827, by a special act of the general assembly of the State of Ohio, and by a special act of the general assembly of the commonwealth of Pennsylvania, for the purpose of constructing and maintaining a navigable canal, from a point on the Ohio canal, at Akron, Ohio, to the waters of the Mahoning river, and thence to meet or intersect the Pennsylvania or Chesapeake and Ohio canal at or near the city of Pittsburg, Pennsylvania, etc.
By the terms of the charter granted by the State of Ohio, it was provided that, “if the corporation hereby created shall not, within ten years from the taking effect of this act, finish and put in operation the canal hereby contemplated, or, if after the completion thereof, they shall fail, for twelve months at one time, to keep the same in repair, then, or in eithér case, the said corporation shall thenceforth forever cease, and their charter be forfeited.” The time for completing the canal was afterward extended to the 31st of December, 1845, and within the time thus extended and limited the canal was completed.
From the time of its completion to the year 1865, the canal was maintained in navigable condition, but from the year 1865 to March 20, 1807, it was suffered to be and remain out of repair, and unnavigable at several points along the line, and especially along the central portions thereof.
On March 20, 1867, the general assembly of the state, by a special act, in terms, authorized the defendant to abandon, lease, or sell the whole or any part of its canal, in the manner and upon the conditions therein prescribed. And, for the purpose of enabling the defendant to avail itself of the provisions of this act, the canal was divided into six sections — one of the conditions being that the canal might *128 be abandoned, leased, or sold, by sections. The defendant, assuming to act under the authority of this statute, abandoned section tour, which embraced about twenty-five miles-of the central portion of the canal; and it claims to have-leased the remaining sections, in accordance with the provisions and conditions of the statute. The only disposition,, however, made of those sections of the canal lying between the abandoned section and its western terminus (which has come to our knowledge) is contained in a written contract, entered into between the defendant and certain owners of mills situate near the western terminus, and on the line of section one. This contract was made in the month of May, 1868, and by its terms the parties of the second part agree to pay to the defendant, from time to time, such sums of money as might be necessary, over and above the tolls received from the canal, to meet the expenses of the defendant in keeping up its organization and in keeping in navigable condition the first three sections of the canal, to wit: 1. Prom its junction with the Ohio canal to the Middlebury feeder, including the feeder; 2. Thence to Franklin (now Kent); 3. Thence to the crossing of the Cleveland and Pittsburg railroad, near the town of Ravenna. And, in consideration thereof, the defendant agreed to maintain its organization, and not to abandon those sections of the canal,
¥e further find that sections two and three, as above described, have not been kept in repair, hut were permitted to remain unnavigable continuously from the said 20th day of March, 1867, to the commencement of this proceeding, to wit, for a period of more than twelve months.
It is true the testimony shows that section one has been, during all the time, kept in reasonable repair, and that in the year 1868 nearly six thousand dollars were expended in repairs upon sections one, two, and three; but, before water was put in the canal, the hanks of sections two and three-were cut down by some evil-disposed persons, and since that time no reasonable effort has been made to repair those-sections or put them in navigable condition.
In the view we take of the case, under this state of facts, it is not necessary to inquire whether the act of March 20, *129 1867, is or is not in conflict with section 1, article 18, of the-constitution, which provides that “ the general assembly shall pass no special act conferring corporate powers.” Nor is it necessary to determine whether the state, by the passage of that act, did or did not waive its right to a judgment of forfeiture against the defendant, on account of any default-on its part- before the passage of the act; for, as to subsequent delinquencies, the statute does not, either by its terms- or by its implications, relieve the defendant from the consequences prescribed in its charter, save only that the defendant was implicitly relieved from keeping in repair that section, which it abandoned under the authority of its provisions. But, as to sections not abandoned, whether leased, or not, the defendant continued, under the obligations of its charter, to keep the same in repair; and, for its neglect to do so, it must abide by the consequences prescribed in its charter. The state is therefore entitled to judgment' of forfeiture, on account of the defendant’s failure to keep its canal in repair for twelve months next after the passage of the act of March 20, 1867.
It is claimed by counsel for the defendant that, inasmuch as section one (and perhaps five and six) has been maintained in navigable condition; and, as large and valuable-mining and manufacturing interests are dependent' upon it for transportation and motive power, sound policy demands that it should be preserved. And it is suggested that it is within the discretion of the court, under such circumstances, to refuse a judgment of dissolution. However much it may be regretted that the state has not adopted measures to secure permanently to the public the advantages-of this public work, the plain duty of the court is to acknowledge the right of the state to demand a forfeiture, according to the provisions of the charter.
In so far, therefore, as the defendant has received corporate franchises from the State of Ohio, the judgment of the-court is, that it be altogether ousted therefrom, and that it be dissolved, and that a trustee be appointed, as required by the statute in such case made and provided.